580 P.2d 1206

**A. L. McCORMICK and Barbara McCormick, husband and wife, d/b/a McCormick Trailer, Appellants,**

v.

**Louis L. ORNSTEIN, Appellee.**

**No. 2 CA–CIV 2688.**

Court of Appeals of Arizona,
Division 2.

March 23, 1978.

Rehearing Denied April 26, 1978.

Review Denied June 6, 1978.

Robert C. C. Heaney, Tucson, for appellants.

Feldman, Wolin & Lahr, P. C. by Herbert E. Lahr and Paul B. Bartlett, Tucson, for appellee.

## OPINION

HOWARD, Judge.

The issue in this case is whether appellee had the right to rescind his contract for the

purchase of a custom-made trailer. The facts considered in the light most favorable to supporting the judgment are as follows.

Ornstein contracted with McCormick for the construction of a custom built trailer to be used in Ornstein's wholesale nuts, bolts and fasteners business to bring merchandise to the door of the customer. McCormick knew the purpose of the trailer and also that Ornstein was going to equip the interior with bins and racks for carrying the merchandise.

On May 9, 1975, Ornstein took delivery of the trailer with McCormick's permission and without paying the balance that was due. When he road tested it he discovered that it was "fishtailing" and difficult to control. He brought it back the next day to McCormick who discovered there had been a mistake in the size of the coupler on the trailer. This was corrected by placing a new ball on the trailer hitch that was attached to Ornstein's truck. Ornstein took the trailer to be painted. In the meantime he called the Department of Motor Vehicle and was informed that he needed a statement of origin to have the trailer registered. He asked McCormick to supply him with the necessary documentation.

The trailer was painted on May 15, 1975 and Ornstein took it back to his premises. He attempted to put in the custom-made racks and bins but found they did not fit because the inside of the trailer was not square. While he was attempting to install the racks and bins it rained and the trailer leaked "like a sieve". He discovered that there were holes where the sides of the trailer met the roof. When he first picked up the trailer Ornstein noted that the roof did not have the A. J. Bayer coping and drip cap that McCormick had agreed to install, but McCormick told him that the company which made the coping was no longer in business and that he had taken care of it another way.

Ornstein again road-tested the trailer but it still swayed and there was a feeling that the truck was being lifted off its front wheels. He spoke to McCormick many times on the telephone explaining the difficulties he was having but received no offer from McCormick to make any corrections.

On May 27, 1975, Ornstein went to McCormick with a check for $750 in his pocket which he believed to be the balance due. He again complained about the deficiencies but McCormick refused to take any corrective action. Ornstein came to the conclusion that the best thing to do was to pay McCormick the balance, get the statement of origin and take the trailer elsewhere for repair. At that time he thought the trailer was capable of being repaired. McCormick wanted an additional $800 over and above the contract price for lengthening the trailer. Ornstein refused to pay for the extra length because he did not authorize it or understand why it was necessary. He left and tore up the $750 check.

On June 18, 1975, Ornstein filed a complaint with the Department of Motor Vehicle in which he stated he would pay the balance of the original contract price upon receipt of the statement of origin. When he filed this complaint he was still under the impression that the trailer could be repaired. On the same day an inspector from the Motor Vehicle Division came out to look at the trailer, shook his head and walked away. At some unspecified time, Ornstein was informed by a person who did repairs that the trailer should be junked.

On June 18, 1975, Ornstein sent a written notice of rescission to McCormick. McCormick refused to refund the $3,200 that Ornstein had paid him and this suit followed.

At trial, Ornstein's expert witness stated that there were many defects which made the trailer "unroadable". In his opinion the trailer posed a safety hazard to anyone hauling it and to the general public using the roads and highways. In addition to the unacceptable workmanship he was of the opinion that the welding throughout was done in such a fashion that it was unpredictable and a failure in the welds could occur. He also found that the wiring was

improperly protected and the wheels were not on the same plane. According to him, even if the wheels were realigned, the wells redone, and the wiring repaired, there would be an overload on the truck hauling it when it was filled with merchandise. He felt that it would be necessary to start from the beginning, the design stage, in order to correct the defects and that consequently it was not merely a matter of making repairs.

The trial court granted Ornstein judgment in the sum of $3,200 and awarded McCormick $211.14 on a $2,084.99 counterclaim.

The trial court, in ruling in favor of Ornstein, found that McCormick had breached the implied warranty of merchantability under A.R.S. Sec. 44–2331(B)(1); that Ornstein was permitted to reject the trailer under the provisions of A.R.S. Sec. 44–2364; that the rejection was made within a reasonable time and that by reasonably notifying McCormick and by holding the trailer with reasonable care at McCormick's disposition for a time sufficient to permit McCormick to remove the trailer, Ornstein made a rightful and effective rejection pursuant to A.R.S. Sec. 44–2365.

Appellants contend A.R.S. Sec. 44–2331(B)(1) is not applicable; that Ornstein accepted the trailer and did not effectively revoke his acceptance within a reasonable time; that he waived any right of rescission because he did not return the trailer for repair; that he did not return the trailer and that he failed to prove damages were an inadequate remedy. They also contend the court erred in failing to award the entire amount of their counterclaim.

Appellants assert that A.R.S. Sec. 44–2331 applies only to goods for resale and that the applicable statute is A.R.S. Sec. 44–2332.

A.R.S. Sec. 44–2331 states in part:

"§ 44–2331. Implied warranty: merchantability; usage of trade

A. Unless excluded or modified (§ 44–2333), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the service for value of food or drink to be consumed either on the premises or elsewhere is a sale.

B. Goods to be merchantable must be at least such as:

1. Pass without objection in the trade under the contract description; and

2. In the case of fungible goods, are of fair average quality within the description; and

3. Are fit for the ordinary purposes for which such goods are used; and

4. Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

5. Are adequately contained, packaged, and labeled as the agreement may require; and

6. Conform to the promises or affirmations of fact made on the container or label if any.

\* \* \*"

A.R.S. Sec. 44–2332 states:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under § 44–2333 an implied warranty that the goods shall be fit for such purpose. Added Laws 1967, Ch. 3, § 5."

■ Appellants have cited to us no authority to support their construction of A.R.S. Sec. 44–2331 and the very language of the statute belies their contention. The nature and scope of the implied warranty of merchantability is a concept relating to the overall quality rather than fitness for a particular purpose. *Sylvia Coal Company v. Mercury Coal & Coke Company,* 151 W.Va. 818, 156 S.E.2d 1 (1967). We believe

the evidence demonstrates that the implied warranty of both statutes was breached.[1]

A.R.S. Sec. 44–2369 states that acceptance of goods occurs when the buyer "1. After a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming *or that he will take or retain them in spite of their non-conformity*; . . ." (Emphasis added). Contrary to the trial court's conclusions, we believe that Ornstein accepted the trailer on May 27, 1975 when he offered to pay the balance of the written contract price on the assumption that he could have the trailer repaired. However, A.R.S. Sec. 44–2371 allows the revocation of the acceptance. It states:

"A. The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

1. On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

2. Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

B. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

C. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them. Added Laws 1967, Ch. 3, § 5."

■ The record demonstrates that when Ornstein accepted the trailer he did so under the assumption that minor repairs could cure the defects. He did not know of the structural defects in the welding and design and could not have known of them without the aid of an expert. There is no doubt that the value of the trailer to him was substantially impaired. Thus A.R.S. Sec. 44–2371(A) applies and his revocation was timely under subsection B.

■ Ornstein was neither required to return the trailer to McCormick for repairs nor was he required to deliver it to McCormick after the letter of rescission. A.R.S. Sec. 44–2371(C) states:

"A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

After his revocation Ornstein had no further obligations with regard to the trailer. A.R.S. Sec. 44–2365(B)(3). Appellants then had the burden to secure the trailer. Ornstein did not have to return the trailer to McCormick for repairs as a prerequisite to a valid revocation. The burden to undertake to cure the defects was upon McCormick. A.R.S. Sec. 44–2356.

■ It was not incumbent upon Ornstein to prove that damages were an inadequate remedy before he had a right to rescission. A.R.S. Sec. 44–2390 states:

"A. Where . . . the buyer . . . justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract . . ., the buyer may cancel . . ."

Having effectively revoked and canceled the contract Ornstein was entitled to recover all sums that he had paid appellants, to-wit $3,200. Since the contract was canceled appellants were not entitled to payment for the "extras".

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.

1. See A.R.S. Sec. 44–2334 for the cumulation of warranties express or implied.