(587 P.2d 1271)

No. 49,298

HAROLD P. LINSCOTT and GLENDA LINSCOTT, *Appellants,* v. IVAN SMITH, d/b/a BESTWAY MOBILE HOMES, and BESTWAY MOBILE HOMES, INC., *Appellees.*

Opinion filed December 15, 1978.

*Patrick L. Dougherty* and *Harry W. Saums,* of Wichita, for appellants.

*James W. Wilson* and *Warren G. Jones,* of Alkire, Dwire and Wood, of Wichita, for appellees.

Before FOTH, C.J., ABBOTT and REES, JJ.

REES, J.: Plaintiffs brought this action for damages for breach of implied warranties of merchantability (K.S.A. 84-2-314) and fitness for a particular purpose (K.S.A. 84-2-315). The named defendants are Ivan Smith and his corporation, Bestway Mobile Homes, Inc. The parties have referred to and treated Smith as the defendant and we will do likewise. Trial was to the court. Judgment was entered for defendant. Plaintiffs appeal. We reverse.

At issue on appeal are various questions involving interpretation and application of the Kansas Uniform Commercial Code (UCC). K.S.A. 84-1-101, *et seq.*

On October 14, 1973, the parties signed an agreement for the sale by defendant to plaintiffs of a new double wide Sheffield mobile home delivered to and "set up" at a rural site outside Halstead, Kansas. It was not a present sale. K.S.A. 84-2-106. Plaintiffs paid the agreed purchase price. Delivery was first attempted on November 15, 1973. En route to the site from defendant's place of business in Wichita, the metal roof blew off

one of the two halves of the mobile home. Both halves were returned to defendant's lot where plaintiffs and defendant discussed what was to be done about the roof. Defendant made several telephone calls to the Texas factory that built the mobile home. He learned it would be two weeks before a new metal roof could be shipped to Wichita and it would take ten days to two weeks to build another mobile home identical to the one damaged. After further discussion, plaintiffs expressed the desire that a conventional composition shingle roof be built and installed. Defendant arranged for the work to be done with defendant and the factory splitting the cost. Plaintiffs examined the new roof at defendant's place of business when it was completed.

Delivery and set up of the mobile home at plaintiffs' site was completed in late February or early March of 1974. Plaintiffs immediately encountered problems with the windows and storm windows. They notified defendant. He promised to send a factory representative to make repairs. Plaintiffs then moved into the mobile home during a warm period in mid-March, 1974. It was soon discovered that the roof leaked. Other problems were experienced. Blowing wind could be felt two to three feet inside the exterior walls. The furnace ran continually but did not adequately warm the living areas. Snow drifted through the front door on one occasion. Plaintiffs made several complaints to defendant concerning the leaky roof and the seeming lack of proper insulation. Despite the problems, plaintiffs continued to live in the mobile home.

When spring came, so did the factory representative. He repaired windows and replaced some of the doors and ceiling tiles in April or May of 1974. That summer the factory representative brought fiberglass insulation from the factory and offered to reinsulate the mobile home. Plaintiffs refused to allow him to reinsulate unless he used foam core insulation. Thereafter, relations between the parties broke down and no further effort was made by defendant to correct matters.

Even more problems were then experienced. Copper water pipes froze and burst; electrical service went out; a hot water heater burned out; kitchen cabinets came apart; the floor cracked; and an oven malfunctioned. Plaintiffs filed this lawsuit in July of 1975. They began making their own repairs the following September.

The trial court entered findings of fact and three conclusions of law. The first conclusion of law is a listing of twelve statutory section numbers from the UCC together with the statement that the court had reviewed them and they were set forth, "without setting them out verbatim . . . as the Conclusions of Law in this case based upon the . . . Findings of Fact." The second conclusion of law is as follows:

"2. After reviewing the evidence and statutory provisions, the Court finds in favor of the [defendant] and finds the [defendant] attempted in all respects to comply and did comply except where [he was] prevented by actions of the Plaintiffs herein."

The third conclusion of law simply states that the findings of fact and conclusions of law are filed and directs that defendant's attorney prepare a journal entry.

We are unable to adequately divine the message intended to be conveyed by the first conclusion of law. We understand from it that the trial judge considered the twelve statutory sections applicable to the findings of fact. Beyond that we fail to comprehend his reasoning and conclusions upon consideration of the found facts and the identified statutory sections. We conclude that our primary review of this matter is necessarily limited to consideration of the second conclusion of law.

In a nutshell, this is an action for breach of implied warranties brought by a buyer against a seller of goods. K.S.A. 84-2-105(1). The action arises out of a transaction in goods and the UCC is applicable. K.S.A. 84-2-102. The subject sale was consummated when the defendant delivered and set up the mobile home at plaintiffs' rural site. K.S.A. 84-2-106(1); K.S.A. 84-2-401(2).

The issue before us is whether defendant was entitled to cure nonconformance, defects, in spite of plaintiffs' refusal to allow them to do so.

That part of the UCC allowing the seller to cure nonconformance is found at K.S.A. 84-2-508:

"84-2-508. Cure by seller of improper tender or delivery; replacement. (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

The right to cure or substitute for nonconforming goods arises only upon the buyer's rejection of the goods. *Bonebrake v. Cox,* 499 F.2d 951, 957 (8th Cir. 1974).

The buyer's right to reject goods and the manner and effect of rightful rejection are described in K.S.A. 84-2-601 and K.S.A. 84-2-602. The remedy of rejection is not available to a buyer after he has accepted the goods. However, acceptance does not of itself preclude other remedies such as an action for breach of warranties. K.S.A. 84-2-607(2). *Tarter v. MonArk Boat Co.,* 430 F. Supp. 1290, 1294 (E.D. Mo. 1977); *Soo Line R. Co. v. Fruehauf Corp.,* 547 F.2d 1365, 1372-1373 (8th Cir. 1977); *Davis v. Enterprises and Davis v. Mobile Homes,* 23 N.C. App. 581, 588, 209 S.E.2d 824 (1974).

Since the buyer's acceptance precludes rejection and rejection is a prerequisite to the seller's right to cure defects, it must be determined whether or not the plaintiffs accepted the mobile home.

What constitutes acceptance is governed by K.S.A. 84-2-606. Acceptance occurs under any of three circumstances there set out:

"(1)   Acceptance of goods occurs when the buyer

"(a)   after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

"(b)   fails to make an effective rejection (subsection (1) of section 84-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(c)   does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

K.S.A. 84-2-602(1) reads as follows:

"(1)   Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

In the present case, plaintiffs moved into and resided in the mobile home with knowledge of defects. Although they demanded repair, they did not reject the mobile home. Their conduct indicated their willingness to accept the mobile home as delivered; they failed to make an effective rejection; and their acts were inconsistent with defendant's ownership of the mobile home. Acceptance occurred. Even if it were said that plaintiffs initially rejected the mobile home, their continued use of it converted their rejection into an acceptance. *Jones v. Abriani,* 169 Ind. App. ___, 350 N.E.2d 635 (1976).

Our conclusion is consistent with decisions handed down in other jurisdictions. In *Testo v. Russ Dunmire Oldsmobile*, 16 Wash. App. 39, 47, 554 P.2d 349 (1976), the plaintiff sued for breach of warranty as to a used car he had purchased. The Washington court held plaintiff had accepted the used car when he took possession of the vehicle, paid for it, used it for nearly a week, and attempted to repair it. His conduct was found to be inconsistent with the seller's ownership.

In *Stamm v. Wilder Travel Trailers*, 44 Ill. App. 3d 530, 534-535, 358 N.E.2d 382 (1976), the buyer was held to have accepted a travel trailer where seven to ten days after delivery he discovered defects but had gone on a trip in spite of the defects because he felt that the defendant would not refund his money.

In *Bowen v. Young*, 507 S.W.2d 600 (Tex. Civ. App. 1974), the buyer received a mobile home on January 4, 1971, and rejected the same on January 21, 1974. Although the rejection would have been valid, the buyer failed to follow the statutory procedure for obtaining satisfaction for the defects pursuant to the Texas Uniform Commercial Code. The buyer, instead, moved into the mobile home and spent $600 to repair it. The court concluded that such conduct constituted acceptance.

Because defendant had no right to cure nonconformance after plaintiffs' acceptance, the trial court erred in concluding defendant was entitled to judgment because defendant's compliance with the sale agreement was prevented by plaintiffs.

Plaintiffs claim error with respect to the following findings of fact made by the trial court:

"11. The plaintiffs thereafter made a contract for the repair of the damaged roof with a factory representative of Sheffield Mobile Homes.

"12. The contract made with the factory representative was not a contract of sale, but one for repair."

If these findings are of any importance, it is because the UCC applies to transactions in goods and not to service or repair contracts. K.S.A. 84-2-102 and K.S.A. 84-2-106. Although the defendant acceded to plaintiffs' request concerning the manner in which the roof was to be replaced by defendant, if there had been an agreement of the parties for defendant's repair of the roof it would be irrelevant to the question of applicability of the UCC to plaintiffs' claim for relief.

The trial court correctly found the risk of loss was on defendant when the roof blew off half the mobile home. Defendant admitted that he and the factory split the cost of replacing the roof. We have reviewed the record in detail and we conclude there is no evidence of a contract between plaintiffs and a factory representative for the repair of the roof. It was incumbent upon defendant to make the necessary repair if he was to meet his contractual obligations as seller. When the sale of the mobile home was finally consummated by delivery and set up, the new conventional type roof was an integral part of the mobile home and the UCC is applicable.

Plaintiffs' last point of error concerns trial court application of K.S.A. 84-2-613 to the facts of the present case. It is unclear whether the trial court applied the statute in its conclusions of law. It is not one of the statutes listed in the first conclusion of law. If it was applied by the trial court, it is unclear how this was done. However, plaintiffs contend its application somehow prevented their recovery of damages. If that be true, then the statute was misapplied.

One of the trial court findings of fact was as follows:

"6. While the mobile home was being transported to the site, a casualty, as defined by [K.S.A. 84-2-613], occurred and the home was transported back to the Defendant's lot."

K.S.A. 84-2-613 is as follows:

"84-2-613. Casualty to identified goods. Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer, or in a proper case under a 'no arrival, no sale'.term (section 84-2-324) then
"(a) if the loss is total the contract is avoided; and
"(b) if the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller."

The statute obviously is applicable to casualty loss rendering the goods nonconformable, or defective in a case such as the one before us. The statute is not here applicable because plaintiffs' claim for relief is not founded upon a claim that the absence of the half-roof blown off in November constituted a defect of which plaintiffs complain. Plaintiffs' complaint is founded upon alleged defects existing when the mobile home left defendant's control at

the time of delivery and set up in late February or early March, 1974. The new roof became an integral part of the mobile home and a part of the bargain with implied warranties attaching when delivery and set up of the mobile home was tendered and accepted. K.S.A. 84-2-613 is not applicable.

Plaintiffs urge us to enter judgment for them and to award damages accordingly, or, in the alternative, to remand on the issue of damages alone. We decline to do so. To recover for breach of implied warranty, it must be established that a defect causing damage was present when the product left defendant's control. *Querry v. Montgomery Ward & Co., Inc.,* 217 Kan. 104, 109, 535 P.2d 928 (1975). There are questions concerning the set up of the mobile home. Defendant was contractually obligated to deliver and set up the mobile home. The trial court found that the mobile home was set up in accordance with industry standards. There was evidence that the site chosen by plaintiffs was muddy and had been under water during recent rains. There are unresolved factual issues with regard to the source of the defects in the mobile home. If the plaintiffs' site choice resulted in settling that in turn caused problems encountered by plaintiffs, defendant is not responsible.

The measure of damages question is not properly before us. Because it would be inappropriate under the circumstances, we do not address ourselves to what measure of damages should be applied.

Reversed and remanded for further proceedings in accordance with this opinion.