668 P.2d 65

James E. JENSEN and Donna Jensen, husband and wife, Plaintiffs-Appellants,

v.

SEIGEL MOBILE HOMES GROUP, a corporation, d/b/a Falls Mobile Homes, Defendant-Respondent.

No. 13608.

Supreme Court of Idaho.

Feb. 24, 1983.

Rehearing Denied Sept. 7, 1983.

# 190

Jack G. Voshell, of Voshell & Wright, Idaho Falls, for plaintiffs-appellants.

William Charles Carr, of Petersen, Moss & Olsen, Idaho Falls, for defendant-respondent.

SHEPARD, Justice.

This is an appeal from a judgment in favor of defendant-respondent Seigel Mobile Homes Group in an action arising from Seigel's sale of a mobile home to the Jensens. Plaintiffs-appellants Jensens had brought the action for rescission and punitive damages against Seigel and its agents and for breach of warranty against both Seigel and Fleetwood, the manufacturer of the trailer. We affirm in part and reverse in part.

In July of 1978, the Jensens, who were approaching the age of retirement, were interested in selling their home and purchasing a mobile home. The evidence could be viewed as demonstrating the following:

Seigel's agent showed Mrs. Jensen several models and she expressed an interest in a "new" 1977 Fleetwood. The agent gave her brochures which can be described as advertising and descriptive materials praising the virtues of Fleetwood mobile homes, together with a brochure entitled "FULL ONE YEAR WARRANTY." She was informed that "all new mobile homes do come with a year warranty from the manufacturer." Mrs. Jensen inspected the 1977 Fleetwood and discovered three problems, *i.e.*, a cracked bathroom wash basin, a sagging

closet door and missing closet rods. Seigel's agent assured her that those three problems would be fixed under the manufacturer's warranty. In fact, the 1977 Fleetwood had been in storage for 16 months and had suffered water damage, only some of which had been repaired.

On August 2, 1978, Mrs. Jensen signed an "agreement" to purchase the mobile home for a price of $20,848.25, at which time she paid $100 as a down payment. That agreement was conditioned upon the Jensens' obtention of financing, and on August 14, the financing was obtained and the balance due was paid the following day. No other terms of the contract were explained to Mrs. Jensen. Between August 17 and August 20, the mobile home was delivered and "set up" on the Jensens' lot. During and after that time the Jensens discovered problems in addition to those enumerated above. Throughout August and September, Seigel was informed of those newly discovered problems and Seigel attempted to remedy the defects. Some were quickly corrected, but some were poorly repaired and still others were not satisfactorily fixed because of difficulty in obtaining parts. The Jensens lived in the mobile home only three days, found it unlivable and moved back to their previous residence.

On September 26, 1978, a pipe in the mobile home ruptured, leaving a pool of water under the home and drenching the insulation and underbelly. Upon notification, Seigel repaired the leak, but did not replace the insulation; Seigel rather contemplated, after a two to four week period of allowing the insulation to dry, further repairs would be made. On September 27, 1978, the Jensens notified the manufacturer, Fleetwood, of defects in the home. An agent for the manufacturer inspected the mobile home and found some 16 defects, including an unsealed underbelly, insulation that needed replacing, improperly attached duct work, water-stained paneling, improperly set toilet and tub drain, and defective drawers. The Fleetwood agent agreed to send the Jensens a listing of the 16 items which would be promptly repaired, but that listing, when sent, was improperly ad-

dressed and never reached the Jensens. On September 29, the Jensens placed a notice on the mobile home listing their phone number and requiring that no work on the mobile home be performed prior to notifying the Jensens.

On October 10, 1978, an attorney for the Jensens wrote a letter of rescission to Seigel demanding return of the purchase price of the mobile home. That demand was refused. Later, on October 17, the listing of the 16 defects was received from the manufacturer, and on November 8, a state inspector discovered 32 violations of the housing code. Many of the defects were minor and could be easily repaired, such as the paneling that needed replacing, but some constituted health hazards, such as the improper seals beneath the house and the improperly connected bathtub drain which was allowing sewage fumes to enter the home.

On November 9, 1978, this action was brought. Prior to trial, the Jensens sought to amend their complaint to include as an allegation fraudulent inducement to the entry into the contract. That motion was denied, but such amendment was permitted at the close of the evidence. Also at the close of evidence, plaintiffs voluntarily dismissed their claim for breach of warranty against the manufacturer Fleetwood, and the court directed verdicts in favor of the defendant on plaintiffs' claim for punitive damages. Upon submission to the jury of the remaining issues of the case, it returned a verdict in favor of the defendant. This appeal results.

On appeal the Jensens assert numerous errors on behalf of the trial court. Since the matter is to be remanded for a new trial, we deem it necessary to treat only those assertions of error relating to the direction of verdicts on punitive damages and those relating to the jury instructions which should have correctly advised the jury of the applicable provisions of the Uniform Commercial Code.

The evidence presented at trial could not have supported a grant of punitive

damages and hence the trial court's action regarding punitive damages is affirmed. The essential issues in this case involved alleged breach of contract and warranty. Punitive damages may not be awarded in causes of action relating to contract absent a showing of fraud, malice, oppression or other sufficient reason for doing so. *Yacht Club Sales and Service, Inc. v. First Nat. Bank of North Idaho,* 101 Idaho 852, 623 P.2d 464 (1980); *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969). The record does not demonstrate any such misconduct on the part of any of the defendants here. By analogy, we hold the same standard should apply to claims for punitive damages based on breach of warranty.

The Jensens submitted requested instructions based upon portions of the Uniform Commercial Code, but those were rejected by the trial court. Rather, the court gave what we deem to be confusing and contradictory instructions regarding the law of revocation of acceptance of goods and the formation of express warranties, and in so doing committed reversible error. These issues, as noted by the trial court, have not been previously decided in Idaho and the court in its decision has suggested the need for guidance by this Court. Hence, we discuss these issues in some particular detail.

We note initially that the provisions of the Uniform Commercial Code governing parties to sales are expressed in terms of "buyer" and "seller." "Buyer" is one who "buys or contracts to buy goods" and the "seller" is one who "sells or contracts to sell goods." I.C. § 28–2–103(a), (d). In the present action, the Jensens are the buyers and Seigel is the seller of the goods in question, and hence the Jensens' voluntary dismissal of the manufacturer does not necessarily affect the Jensens' cause of action against Seigel.

## I. RIGHT TO REVOKE ACCEPTANCE

The Jensens concede that they accepted their mobile home, but assert that breaches of contract and warranty substantially impaired the value of the mobile home to them and, therefore, they may rightfully revoke their acceptance.

■ There are five preconditions to effective revocation of acceptance relevant to the facts in this case:

A. Notice of revocation;

B. A nonconformity which substantially impairs the value of the mobile home;

C. Acceptance on the reasonable assumption that known defects would be cured or that acceptance was reasonably induced by the difficulty of discovery of defects;

D. Revocation occurs within a reasonable time after the nonconformity was discovered or should have been discovered; and

E. Revocation occurs "before a substantial change in the condition of the goods which is not caused by their own defects." J. White and R. Summers, Uniform Commercial Code, p. 303 (2d ed. 1980); I.C. § 28–2–608.

■ A notice of revocation of acceptance clearly is not effective until a buyer gives a seller notice thereof. I.C. § 28–2–608(2). While here the Jensens did not give a notice of "revocation" as such, they did give notice of rescission, and it is not argued that such notice was inadequate. It is consistently held that a notice of rescission operates as notice of revocation of acceptance for the purpose of that statute. *See, e.g., Peckham v. Larsen Chevrolet-Buick-Oldsmobile, Inc.,* 99 Idaho 675, 587 P.2d 816 (1978); *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382 (Or.1976). Therefore, we hold that there was sufficient notice.

The standard for permitting revocation requires that nonconformity "substantially impairs" the value of the goods to the buyer and reflects the theory that one who has used goods for a significant amount of time should not be allowed to force used goods back on the seller unless the defect in the goods is substantial, as opposed to technical. *See* J. White and R. Summers, *supra,* at 301.

■ There appears to be confusion as to the meaning of "substantially impairs" and it has been called a subjective test. *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382 (Or.1976); *Keen v. Modern Trailer Sales, Inc.,* 40 Colo.App. 527, 578 P.2d 668 (Colo.Ct. App.1978). It is subjective in that the test is whether the nonconformities substantially impaired the value of the home to the actual buyer and not whether the nonconformities substantially impaired the value of the home to a reasonable person. J. White and R. Summers, *supra,* at 308–09; *see* I.C. § 28–2–608, Official Comment 2. As illustrated in *Jorgensen,* a two-step determination is required to resolve the question of the existence of substantial impairment. The court must first determine the purpose for which the Jensens purchased the home and, secondly, determine whether the nonconformities substantially impaired their ability to use the home for the purpose intended. Here the Jensens purchased the home for use as a retirement residence and hence the jury, on remand, must determine whether the defects in the home substantially impaired the Jensens' ability to use the home for that purpose.

I.C. § 28–2–608(1) allows a buyer who has accepted goods which contain substantially-impairing defects to revoke when he has accepted:

"a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

■ Under correct instructions, the jury in applying I.C. § 28–2–608(1) could have found that although the Jensens prior to the purchase knew of nonconformities in the mobile home, they were assured they would be corrected, and that some at least were not "seasonably cured." The jury could have also found that other of the claimed defects, such as defective pipes and missing insulation, were difficult of dis-

covery and would not have been revealed by inspection of a layman.

■ I.C. § 28–2–608(2) requires that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ." The jury under correct instructions could have found that the Jensens did revoke acceptance within a reasonable time after they discovered or should have discovered the grounds for revocation. The authorities would support a jury finding that revocation had occurred within "a reasonable time" regardless of the Jensens' occupancy of the mobile home. *Erling v. Homera,* 298 N.W.2d 478 (N.D.1980); *Ford Motor Co. v. Mayes,* 575 S.W.2d 480 (Ky.Ct. App.1978); *McCormick v. Ornstein,* 119 Ariz. 352, 580 P.2d 1206 (Ariz.Ct.App.1978); *Stroh v. American Recreation & Mobile Home Corp.,* 35 Colo.App. 196, 530 P.2d 989 (Colo.Ct.App.1975); *Frontier Mobile Home Sales, Inc. v. Trigleth,* 256 Ark. 101, 505 S.W.2d 516 (Ark.1974).

■ I.C. § 28–2–608(2) requires that revocation must occur "before any substantial change in condition of the goods which is not caused by their own defects." Here the evidence would support a jury finding that the changes which occurred in the mobile home after delivery to the Jensens were caused by its own defects or by the attempts of Seigel to remedy the defects.

■ Seigel argues that the seller has a right to cure and thus he should have been given an adequate opportunity to cure the defects in the mobile home after acceptance by the Jensens and that the Jensens could not revoke their acceptance prior to such attempted cure. A right to cure is relevant only when a buyer has rejected the goods prior to a formal acceptance and the Uniform Commercial Code does not allow a seller the right to cure defects following a buyer's acceptance of the goods. *Linscott v. Smith,* 3 Kan.App.2d 1, 587 P.2d 1271 (Kan.Ct.App.1978); *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir.1974); Note, Uniform Commercial Code—Sales—Sections 2–508 and 2–608—Limitations on the Perfect-

Tender Rule, 69 Mich.L.Rev. 130 (1970–71). "[T]he notion that a seller has a right to attempt cure after a buyer gives notice of revocation of acceptance is a faulty conclusion reached by courts which have confused sections 2–508 and 2–608." Note, *supra,* at 147.

■ We also note that although the Jensens notified Seigel of defects and attempted to obtain cures therefor, the Jensens thereby gave Seigel a right to cure only until they found his efforts to be unsatisfactory. Such defects as were actually cured by Seigel cannot be utilized in the determination of whether value was substantially impaired by the defects. *See Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.,* 21 Wash.App. 194, 584 P.2d 968 (Wash.Ct.App.1978). Such holding rewards Seigel for repairs which were promptly made, but also excludes from consideration attempted but unsuccessful repairs, improper repairs, planned but uncompleted repairs, etc., since such considerations are irrelevant under the Uniform Commercial Code. *See, e.g., McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, 561 P.2d 832 (Kan.1977).

Arguably, there is language in the contract attempting to limit the right of the Jensens to revoke or at least to limit the recoverable damages. The ability of a seller to limit remedies is governed by I.C. § 28–2–719, which provides that the limited remedy is optional on the part of the buyer and in addition to other U.C.C. remedies, unless it is expressly agreed to be exclusive, I.C. § 28–2–719(1)(b) and Official Comment 2. A remedy is not exclusive where it "fails of essential purpose" or "operates to deprive either party of the substantial value of the bargain," I.C. § 28–2–719(2) and comment 1; and remedies may not be limited or excluded if to do so would be unconscionable, I.C. § 28–2–719(3), Official Comments 1 and 3. It appears to be admitted and the jury could have found that Mrs. Jensen did not discuss and did not bargain for the limitation of remedy language, and further such an attempted exclusion of remedies could well be considered uncon-

scionable since "it is of the very essence of a sales contract that at least minimum adequate remedies be available." I.C. § 28–2–719, Official Comment 1. It is generally unconscionable for a seller to seek to exclude himself from all liabilities. *See* R. Lord, Some Thoughts About Warranty Law; Express and Implied Warranties, 56 N.D.L.Rev. 509 (1980).

On remand, if it is found that the Jensens justifiably revoked acceptance of the mobile home, the Uniform Commercial Code requires that revocation remedies be liberally administered to put the buyers in "as good a position as if the other party had fully performed ... " I.C. §§ 28–1–106(1), 28–2–711, Official Comment 3. I.C. § 28–2–711(1) allows recovery of the price paid (here it is not disputed that the price paid was $20,848.25) and any incidental and consequential damages caused by the breach. I.C. §§ 28–2–711(1)(b), 28–2–713(1).

## II. WARRANTIES

It is also asserted that the trial court erred in failing to adequately instruct the jury relating to the issues of warranties, both express and implied. We agree. However, since we hold *infra* that the express warranties exceeded any implied warranties which might have been given, we do not address the implied warranty issue.

I.C. § 28–2–313(1) indicates when express warranties are created by a seller:

(a) "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

■ We deem it necessary to distinguish between "bargain" as used in contract parlance and as the term is used in "part of the basis of the bargain" in the context of

warranty. A significant difference is that the buyer of goods need not *rely* on an "affirmation of fact or promise" or "description" for the same to become "part of the basis of the bargain" and hence an express warranty. *Autzen v. John C. Taylor Lumber Sales, Inc.,* 280 Or. 783, 572 P.2d 1322 (Or.1977); *see also Gladden v. Cadillac Motor Car Division,* 83 N.J. 320, 416 A.2d 394 (N.J.1980). *See also* Lord, *supra,* indicating that a majority of the courts hold that reliance is unnecessary. *See also* I.C. § 28–2–313, comment 3. *See also* I.C. § 28–2–313, comment 6, stating: "In general, the presumption is that * * * any affirmation of fact is intended to become a basis of the bargain."

Express warranties will not be created when there is clear proof of some fact which took the affirmation or description out of the agreement, I.C. § 28–2–313, comment 3, or when the affirmation is merely of the value of the goods or constitutes puffery. I.C. § 28–2–313(2), comment 8. A fact which will also negate some warranties is an examination by the buyer prior to his decision to purchase and when such examination would disclose clearly proven "patent defects which are discoverable or latent defects which are discovered." Lord, *supra.*

▇▇▇ The record here indicates that while Mrs. Jensen discovered certain patent defects and agreed to accept the mobile home with those defects, Seigel also expressly warranted those defects would be repaired. The record discloses that Seigel in connection with the sale gave the Jensens certain materials, *i.e.,* the written contract, the "FULL ONE YEAR WARRANTY" (also described as the "manufacturer's warranty"), the Mobile Home Owner's Manual, and various advertising pamphlets describing the mobile home. Advertising material and pamphlets given by manufacturers for distribution by retailers can form the basis of an express warranty. *Scheuler v. Aamco Transmissions, Inc.,* 1 Kan.App.2d 525, 571 P.2d 48 (Kan.Ct.App.1977); *Gladden v. Cadillac Motor Car Division,* 83 N.J. 320, 416 A.2d 394 (N.J.1980). Here the ma-

terials contain a host of affirmations and descriptions. Disregarding many of the descriptions which could be deemed puffery, nevertheless, at the least, the material clearly describes and affirms that the Fleetwood mobile home:

1. is a new, well-built home of lasting value;

2. was completely inspected both by the dealer and the manufacturer prior to delivery to the buyer, and the inspections included checks of the plumbing, heating, and electrical systems, to insure those systems are not defective;

3. is in compliance with, or exceeds, all state, local and federal building codes and all industry standards;

4. has more than adequate insulation;

5. is a "good looking" home which affords "comfortable," "practical," "highly livable," and "luxurious living;"

6. comes with an affirmation that dealer service, tests and adjustments will insure the home is "trouble-free;"

7. has a warranty and "Ownercare" procedure which are complete, and which will assure the buyer of "complete satisfaction."

Those affirmations became part of the basis of the bargain and hence constituted express warranties as to all aspects of the mobile home, except those three defects which were discovered prior to the sale and which Seigel agreed to repair.

▇▇▇ The contract contains language that purports to disclaim, among other things, "all warranties, express or implied . . ." However, I.C. § 28–2–316(1) governs an attempted disclaimer of express warranties by providing that negation or limitation of express warranties is inoperative when such negation or limitation is inconsistent with the language creating the express warranty. *See* I.C. § 28–2–316, Official Comment 1. I.C. § 28–2–313, Official Comment 4, explains the policy considerations for prohibiting the giving of express warranties on the one hand and then effectively taking them away on the other hand

through the medium of contract disclaimers:

"In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2–316."

■■■ Hence, we hold that Seigel did not effectively disclaim the express warranties. The jury under correct instructions could have found that express warranties were breached in the following particulars:

1) numerous defects in the home indicate it was not "well-built;"

2) there were defects in the plumbing and electrical systems;

3) the home violated the state housing code in 32 ways even after Seigel had made several trips to the home to remedy defects;

4) there was insulation missing from the home;

5) the constant breakdowns and numerous defects hardly justify the claim that the mobile home afforded "highly livable" or luxurious living; the "practical" and "comfortable" claims are perhaps closer questions;

6) dealer service, tests and adjustments did not insure the home was "trouble-free;"

7a) the intended warranty and "Owner-care" procedure cannot fairly be considered "complete" until one recognizes the ineffectiveness of the disclaimer of warranties and that the limitation of remedies provision is not exclusive;

7b) the intended warranty and "Owner-care" procedure did not, in fact, assure the buyer of "complete satisfaction."

Seigel argues that nonetheless any remedy which the Jensens otherwise possessed was limited by contract language disavowing any liability, and that language stating that the manufacturer's written warranty would apply. We have previously held that a disavowal of all liability on the part of the seller is unbargained for and may be unconscionable. It is also argued that repair was intended to be the exclusive remedy of the buyer. We conclude that there is no contract language clearly expressing the intent to limit the remedies of the Jensens to repair. "[I]t is inconceivable that such a disclaimer or limitation of an express warranty which is other than clear and conspicuous could be regarded as valid." *Gladden v. Cadillac Motor Car Division,* 83 N.J. 320, 416 A.2d 394 (N.J.1980).

■■■ It is well settled in Idaho that ambiguous contract language will be construed most strongly against the party who prepared the contract. *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 540 P.2d 792 (1975); *Dale's Service Co., Inc. v. Jones,* 96 Idaho 662, 534 P.2d 1102 (1975); *Dunford v. United of Omaha,* 95 Idaho 282, 506 P.2d 1355 (1973); *Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966). Clearly, the preparation of the contract must be attributed to Seigel. We conclude that if the contract limitation language is argued as excluding all remedies against the seller, it is unconscionable and if the language is argued as creating a limited remedy of repair, it fails because such is not clearly expressed in the contract.

I.C. §§ 28–2–714 and 715, and the comments thereto, indicate the means for measuring damages for breach of warranty. Damages for breach of warranty may be determined "in any manner which is reasonable." I.C. § 28–2–714(1) and Official Comments 2 and 3; Lord, *supra.* The usual, although not exclusive, method of ascertaining damages for breach of warranty is by measuring "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." I.C. § 28–2–714(2) and Official Comment 3. If there are "special circumstances" which indicate a different measure

of damages is reasonable, that different measure may be used. Lord, *supra.* Any incidental and consequential damages proved may also be recovered. I.C. §§ 28–2–714(3), 28–2–715.

At trial the court refused to admit Jensens' tendered evidence relating to the value of the home because of the defects as contrasted with the value of the home had it been as warranted. Upon retrial, the Jensens may submit such additional evidence tending to show that difference in valuation. We specifically do not reverse the exercise of discretion of the trial court in refusing to admit the tendered evidence. *See Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978). If upon remand the Jensens are unable to prove the amount of loss in value caused by the breaches of warranty, such would constitute a "special circumstance" which may enable them to recover on an alternate measure of damages. *See Downs v. Shouse,* 18 Ariz.App. 225, 501 P.2d 401 (Ariz.Ct.App.1972).

In summary, we hold that the trial court erred in failing to adequately instruct the jury on the matters of revocation of acceptance of the mobile home, the breaches of express warranties, and damages for breach of express warranties. The cause must, therefore, be remanded for a new trial limited to those enumerated issues. Upon remand, if the jury finds the existence of nonconformities which substantially impair the value of the home to the Jensens as a post-retirement residence, then the Jensens can revoke their acceptance and recover the purchase price of $20,848.25, and all incidental and consequential damages. If substantial impairment is found, warranty issues need not be addressed, but if substantial impairment is not found, the jury should determine what, if any, express warranties have been breached. If such breach is found, the Jensens are entitled to recover the difference between the value of the mobile home as warranted and the value of the mobile home as received, plus any incidental and consequential damages. In the event the Jensens cannot show any difference in value, they may recover damages which are demonstrated as some other "reasonable measure" of direct damages suffered as a result of the breaches of warranty.

Reversed and remanded for a new trial. Costs to appellants. No attorney's fees allowed.

DONALDSON, C.J., BISTLINE, J., and WALTERS, J. pro tem., concur.

BAKES, J., concurs in the result.

BAKES, Justice, concurring specially:

After reviewing the instructions as a whole, particularly Instruction Nos. 12, 13, 19, 20 and 25, relating to formation and revocation of the contract, I agree with the majority that those instructions are sufficiently contradictory and confusing to require a new trial. However, I cannot agree with much of the majority opinion as it relates to sales and warranty law, much of which is not really applicable to the peculiar facts of this case which involve a written contract for sale of a 17 month old mobile home in an "as is" condition, but nevertheless with a one year manufacturer's written warranty to repair any defects which are discovered during the one year period after sale.