**IN THE COURT OF APPEALS OF TENNESSEE**
**AT KNOXVILLE**

FILED

April 15, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| FAYE L. O'BRYANT | ) | KNOX CIRCUIT |
| | ) | |
| Plaintiff/Appellant | ) | NO. 03A01-9810-CV-00325 |
| | ) | |
| v. | ) | HON. DALE WORKMAN |
| | ) | JUDGE |
| REEDER CHEVROLET | ) | |
| COMPANY, INC., d/b/a/ | ) | |
| CHEVROLET-GEO COMPANY, | ) | |
| | ) | |
| Defendants/Appellees | ) | REVERSED and REMANDED |

J. Myers Morton and George W. Morton, Jr., Knoxville, for Appellant.

James A. McIntosh, Knoxville, for Appellees.

## O P I N I O N

INMAN, Senior Judge

### I

A jury returned a verdict for the defendant in this action seeking rescission of the purchase of an automobile for alleged violations of the Tennessee Commercial Code and the Consumer Protection Act.

### II

The plaintiff purchased a Cavalier Chevrolet from the defendant which was defective. The manufacturer reacquired the vehicle in a settlement which required the defendant to furnish the plaintiff with a replacement Cavalier.

After taking possession of the second Cavalier,[1] she discovered a document in the glove compartment which indicated that the Cavalier had been repaired.

---

[1] Which the defendant acquired from a Kentucky dealer.

Thereupon she examined it and discovered a dent on the door that had been repaired and repainted.

She returned the Cavalier to the defendant dealership twelve days later, but continued to make monthly payments of $275.72 to the financing bank.[2] The complaint was filed August 11, 1997, alleging that the Cavalier had been wrecked and repaired, and that she had rejected it. Alternatively, she alleged that she revoked her acceptance of the vehicle, pursuant to T.C.A. § 47-2-601, 608. She further alleged that the defendant violated the Tennessee Consumer protection Act, T.C.A. § 47-18-101, *et seq.* by failing to disclose that the Cavalier had been "wrecked and repaired."

The jury was impanelled and allowed to inspect the vehicle shortly before trial began. During the interim between the return of the vehicle and the trial, the defendant had sanded and buffed the painted portion of the door, and applied coats of a rubbing compound known as eurothane.

It is fair to observe that the damage consisted of a "ding" as that word has come into street usage, the cost of the repair of which was slightly more than $200.00. Various witnesses testified on either side, that the repairs were essentially sloppy, or were entirely satisfactory.[3] The plaintiff vigorously insisted that she wanted a "perfect car;" the defendant just as vigorously protested that the small dent was *de minimis,* had nevertheless been satisfactorily repaired, and that the plaintiff was unreasonable in her demands.

---

[2]As of the date of trial she had paid $4,100.00 on the promissory note. The vehicle "languished" at the dealership.

[3]The dent was filled. An area two feet forward on the door and two feet on the quarter panel was repainted. The plaintiff testified that the paint was rough and did not match.

## III

The plaintiff offered no objections to the jury instructions, other than "the failure to charge that the relevant date in [the] determination of the conditions is the date of delivery from the defendant to the plaintiff."

The trial judge refused the plaintiff's special request to instruct the jury that

"Your determination of whether plaintiff is entitled to revoke her acceptance or rescind and return the vehicle is to be governed by the condition of the vehicle at the time plaintiff received the vehicle. Any modifications or changes in the vehicle or its appearance by defendant after the vehicle was returned does not excuse defendant's failure to deliver initially an appropriate new vehicle. Improvements by defendant after the vehicle has been returned are not relevant to the condition of the vehicle when it was first delivered to plaintiff. It is the condition when first delivered which determines if plaintiff has the right to revoke and/or return."

## IV

T.C.A. § 47-2-601 provides that ". . . if the goods . . . fail in any respect to conform to the contract, the buyer may reject the whole . . . ." Section 608 provides that "the buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it . . . without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

The buyer is permitted to revoke acceptances if (1) the vehicle was defective to the point where its value was substantially impaired, or if the defect reasonably undermined the buyer's confidence that the vehicle would perform the function for which it was purchased; (2) the defect was not known and would have been difficult for the buyer to discover; (3) and the revocation of acceptance occurred within a reasonable time after discovery of the defect and before any substantial change in the vehicle not caused by the defect. *Patton v. McHone,* 822 S.W.2d 608

(Tenn. App. 1991). A substantial impairment exists if the defect shakes the buyer's faith in the product. *Haverlah v. Memphis Aviation,* 674 S.W.2d 297 (Tenn. App. 1984). The appellant argues that the language of the statute "substantially impairs its value to him if he has accepted it" is plainly subjective, and that the question of whether the defect is remedial is irrelevant in light of T.C.A. § 47-2-508, the right-to-cure statute. A right to cure is relevant only when a buyer has rejected the goods prior to formal acceptance and the UCC does not allow a seller the right to cure following the buyer's acceptance. A seller has no right to cure after the buyer has given notice of revocation, and the right to cure does not limit revocation of acceptance. *See, Jensen v. Seigel Mobile Home Group,* 668 P.2d 65 (Idaho 1983); Uniform Commercial Code, White & Summers (2nd Ed.), 293.

The thrust of the defense was directed to the asserted unreasonableness of the plaintiff's position and attitude, in light of the fact that the damage was *de minimis* and correctable. It was for this reason that the defendant filed a motion to allow the jury to inspect the vehicle, which did so under the mistaken belief, according to the plaintiff, that there had been no change in the condition of the vehicle when, in fact, the repairs had been made. Hence, the defendant argues, the jury was thus persuaded that the plaintiff unreasonably revoked her acceptance.

Witnesses for the defendant testified that after the vehicle was returned the repaired area was repainted, buffed and sanded. As the matter progressed the defendant asserted that it was never afforded the opportunity to correct the problem as described by the plaintiff.

The combination of these circumstances, according to the plaintiff, required a jury instruction that it was the condition of the vehicle at the time of delivery as

4

contrasted to the time of trial which is controlling. We agree with this argument, which makes it necessary to consider (1) whether the charge which the plaintiff specially requested was covered in the general charge, or, if not, whether the trial judge's refusal to charge the special instruction was harmless error.

We have examined the charge and do not find that it covered the plaintiff's theory that her entitlement to rescission was governed by the condition of the vehicle when it was delivered to her. In light of the fact that the jury was allowed to inspect the vehicle, we agree with the appellant that the instructional omission was crucially prejudicial. The rule in Tennessee is that the trial court should instruct the jury upon every issue of fact and theory of the case raised by the pleadings and supported by the proof. *Street v. Calvert*, 541 S.W.2d 576 (Tenn. 1976). When a special instruction (1) has been requested, (2) is a correct statement of the law, (3) is not included in the general charge and (4) is supported by the evidence introduced at trial, the court should give the instruction. *Tenn. Farmers Mutual Ins. Co. v. Hinson,* 651 S.W.2d 235 (Tenn. App. 1983).

Finally, we address the issue of whether the nonconformity substantially impaired the value of the vehicle. It is important to note that the language of the statute, "a buyer may revoke his acceptance if the nonconformity substantially impairs *the value to him,"* involves subjectivity. The UCC does not define "substantial" impairment, probably because of the privilege of subjectivity, which may vary from person to person. Even so, any subjective decision of a buyer is subject to some scrutiny, reasonably exercised; revocations based on mere whim or defects so trivial as to evince sheer unreasonableness should be excluded. But the language "value to him" may not be lightly regarded; if the Legislature had intended to exclude damages that a reviewer might describe as trivial, as the

defendant argues, it could have so provided. Whether the nonconformity substantially impaired the value of the vehicle to the plaintiff under the circumstances of this case was for the jury to determine.

The plaintiff presents an issue of whether the court erred in charging the jury "that a new vehicle is new if it has not been resold or has not been previously sold at retail and titled to another." This charge was not objected to upon the court's specific inquiry, and the issue will not be considered.

The judgment is reversed and the case is remanded for a new trial. Costs are assessed to the appellee.

_____
CONCUR:

William H. Inman, Senior Judge

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge