NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0335


WILLIAM WEAVER & a.

v.

RANDALL STEWART & a.

Argued: May 3, 2016
Opinion Issued: October 27, 2016


McDowell & Osburn, P.A., of Manchester (Joseph F. McDowell, III, Mark Morrissette, and Heather V. Menezes on the brief, and Mr. Morrissette orally), for the plaintiffs.

CullenCollimore, PLLC, of Nashua (Brian J.S. Cullen and Shelagh C.N. Michaud on the brief, and Mr. Cullen orally), for defendants Town of Pelham, Derek Gioia, and Joseph Roark.

Boyle, Shaughnessy & Campo, P.C., of Manchester (Michael P. Johnson and Quinn E. Kelley on the brief, and Mr. Johnson orally), for defendant Woody's Auto Repair & Towing, Inc.

BASSETT, J.  The plaintiffs, William Weaver, individually and as administrator of the estate of his wife, Marceline Weaver, and James Sousa, appeal decisions of the superior court granting summary judgment in favor of the defendants, the Town of Pelham (Town), Pelham Police Chief Joseph Roark, Pelham Police Officer Derek Gioia (collectively, the Pelham defendants), and Woody's Auto Repair & Towing, Inc. (Woody's).

This case arises from an automobile accident allegedly caused by Randall Stewart, the owner and driver of a vehicle that collided with the plaintiffs. Stewart is not participating in this appeal.  The Trial Court (McHugh, J.) concluded that, although the Pelham defendants are not immune from suit under RSA chapter 507-B (2010) or under the common law, they are entitled to summary judgment because of the lack of evidence that they proximately caused the motor vehicle collision that resulted in the plaintiffs' injuries.  We affirm the court's finding that there was insufficient evidence that the Pelham defendants proximately caused the accident.  Accordingly, we need not address the Pelham defendants' cross-appeal on immunity.

The Trial Court (Anderson, J.) granted summary judgment in favor of Woody's, concluding that:  (1) because Stewart's vehicle had been towed the night before the collision pursuant to RSA 262:32 (2014), rather than impounded pursuant to RSA 262:40 (2014), Woody's was not required to obtain authorization from the police or a court prior to releasing the vehicle the next day to its owner; (2) Woody's cannot be liable for negligent entrustment of a motor vehicle because of the lack of evidence that a Woody's employee knew, or should have known, that the owner was impaired when he picked up his vehicle; and (3) given the absence of evidence demonstrating that Woody's breached a duty owed to the plaintiffs, it is not liable for negligence.  We affirm.

I.  Background

The relevant facts follow.  At approximately 11:30 p.m. on June 25, 2010, Gioia responded to a call reporting that a person was driving a vehicle erratically.  He pulled the vehicle over and identified the driver as Stewart. Gioia noticed an odor of alcohol, observed that Stewart had glassy eyes, and administered field sobriety tests that Stewart failed.  Gioia arrested Stewart for driving under the influence and called Woody's, requesting that Woody's tow Stewart's vehicle.  At the scene, Gioia conducted an inventory search of the vehicle, noting that the vehicle contained "Cds," "[m]iscellaneous pieces of clothing," and "1 can of beer."

Gioia took Stewart to the Pelham police station for booking.  Stewart refused to take a breathalyzer test.  Gioia then confiscated Stewart's license and provided him with a copy of the Administrative License Suspension form that would serve as his temporary license, see RSA 265-A:30 (2014).  Gioia charged Stewart with, among other things, driving while under the influence.

2

At approximately 1:30 a.m., Gioia transported Stewart to a home in Windham. According to Gioia, at that time, Stewart appeared to be "somewhat impaired."

At 6:49 a.m., and again at 7:23 a.m., Stewart telephoned the Pelham Police Department and spoke briefly with Gioia. In response to Stewart's questions, Gioia told him that his vehicle was at Woody's and that he could retrieve it after Woody's opened for business at 9:00 a.m. In his deposition Gioia testified that, during the 6:49 a.m. telephone call, Stewart "sounded better" than he did the night before. Gioia testified that he understood everything Stewart said, and it "sounded like" Stewart understood everything that Gioia said to him. Gioia also testified that Stewart sounded the same during both of the early morning telephone calls. According to Gioia, these telephone conversations "sounded like a normal course of conversation [that he] would have with any citizen that called in."

At some point after 8:30 a.m. and before 10:00 a.m. Stewart arrived at Woody's, paid the towing and storage charges, and retrieved his vehicle. Brendan Wood, who owned Woody's, testified in his deposition that Stewart did not appear to be impaired when he picked up the vehicle. At approximately 11:19 a.m., Stewart telephoned the police station and left an incoherent voicemail message for Gioia.

At approximately noon, Stewart drove his vehicle into oncoming traffic in Hampstead, striking the plaintiffs who were riding on motorcycles. The plaintiffs were severely injured, and Weaver's wife died. According to police officers at the accident scene, Stewart exhibited signs of impairment, and failed a field sobriety test. Following the collision, Hampstead police conducted a search of Stewart's vehicle and found a Xanax prescription "tag" in the "back seat area." According to Edward J. Barbieri, Ph.D., a forensic toxicologist retained by Stewart, multiple drugs, including Xanax, were detected in blood samples taken from Stewart after the accident.

In September 2012, the plaintiffs sued the Pelham defendants and Woody's. In their action against the Pelham defendants, the plaintiffs asserted several negligence claims, including negligent entrustment of a motor vehicle. In February 2014, after the parties had an opportunity to conduct discovery, the Pelham defendants moved for summary judgment arguing that: (1) they were immune from liability under RSA chapter 507-B because the plaintiffs' claims did not arise out of the Pelham defendants' "ownership, occupation, maintenance or operation" of motor vehicles or premises; (2) they were entitled to official immunity under the common law; and (3) the plaintiffs offered no evidence that any act or omission by the Pelham defendants proximately caused the accident. (Quotation omitted.)

The plaintiffs objected, asserting that the Pelham defendants mischaracterized their negligence claims "as solely a failure to hold Mr. Stewart

in custody after his . . . June 25, 2010 arrest in an effort to create immunity where none exists" and that, rather, "[t]his case is about the negligent entrustment of a motor-vehicle [sic] seized and controlled by the Pelham PD to an intoxicated Mr. Stewart on the morning of June 26, 2010." The plaintiffs argued that RSA 507-B:2 allows negligent entrustment actions, and that the Pelham defendants were not entitled to either statutory or common law immunity.

The trial court concluded that, because the plaintiffs chose to respond to the motion by arguing in support of only the negligent entrustment claim, the remaining claims against the Pelham defendants — for failing to detain Stewart and the claim against the police chief for improperly training Gioia — should be dismissed. The plaintiffs do not challenge the trial court's decision to dismiss the other claims against the Pelham defendants. We limit our analysis on appeal accordingly.

The trial court rejected the Pelham defendants' argument that they were entitled to immunity under RSA chapter 507-B or to official immunity under the common law. Nonetheless, the court concluded that the Pelham defendants were entitled to summary judgment because of the lack of evidence that they proximately caused the motor vehicle accident that resulted in the plaintiffs' injuries. The plaintiffs unsuccessfully sought reconsideration.

In regard to the suit against Woody's, the plaintiffs asserted negligence claims and that Woody's violated RSA 262:40. Woody's moved for summary judgment, arguing that: (1) because Stewart's vehicle was towed rather than impounded under RSA 262:40, Woody's was not required to obtain authorization from the police or a court prior to releasing the vehicle; (2) given the undisputed material facts, it could not be found liable under the theory of negligent entrustment; and (3) Woody's owed no duty of care to the plaintiffs that would support a theory of negligence. The trial court granted the motion.

The court found that Woody's did not violate RSA 262:40, concluding that the undisputed facts established that the vehicle was towed pursuant to RSA 262:32, rather than impounded pursuant to RSA 262:40. The trial court also rejected the plaintiffs' argument that RSA 262:40 is a "safety statute" designed to impose a duty of care upon an entity such as Woody's. (Quotation omitted.)

In addition, the trial court concluded that Woody's was not liable for negligent entrustment because, among other reasons, "no reasonable jury could conclude" that Wood had reason to believe that Stewart was impaired when he picked up his vehicle. As to the plaintiffs' negligence claim, the court concluded that, even assuming that Woody's owed the plaintiffs a duty, there was insufficient evidence establishing that the duty was breached because there was no evidence that Wood knew, or should have known, that Stewart

4

was impaired. The plaintiffs unsuccessfully sought reconsideration of the trial court's rulings. This appeal followed.

## II. Appellate Arguments

### A. Standard of Review

"The mission of the summary judgment procedure is to pierce the pleadings and assess the proof in order to determine if there is a genuine issue of material fact requiring a formal trial of the action." Community Oil Co. v. Welch, 105 N.H. 320, 321 (1964) (quotation and citation omitted). A party opposing a motion for summary judgment must "set forth specific facts showing a genuine issue for trial," and not simply assert "general allegations or denials." Hill-Grant Living Trust v. Kearsarge Lighting Precinct, 159 N.H. 529, 535 (2009) (quotation omitted).

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Pike v. Deutsche Bank Nat'l Trust Co., 168 N.H. 40, 42 (2015). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. "We review the trial court's application of the law to the facts de novo." Id.

### B. Pelham Defendants

The plaintiffs argue that the trial court erred when it granted summary judgment in favor of the Pelham defendants on the claim of negligent entrustment. Negligent entrustment is based upon the principle that "the owner of a motor vehicle may be held liable for an injury to a third person resulting from the operation of a vehicle which he has entrusted to one whose incompetency to operate it . . . is know[n] or should have been known to him." Chalmers v. Harris Motors, 104 N.H. 111, 114-15 (1962). "[A] defendant could be unfit because of age, bad habits, dangerous propensities, carelessness, recklessness, or habitual driving while under the influence of alcohol." Burley v. Kenneth Hudson, Inc., 122 N.H. 560, 563 (1982). "To succeed on a negligent entrustment claim, the plaintiff must prove not only the driver's incompetence, but also the owner's knowledge of that incompetence." Burley, 122 N.H. at 563. Because the Pelham defendants do not argue otherwise, we assume, without deciding, that negligent entrustment extends to non-owners of a vehicle.

The plaintiffs argue that "material issues of fact were in dispute regarding whether Officer Gioia knew or should have known that Mr. Stewart was intoxicated before the June 26, 2010 accident" and thereby "facilitated Mr. Stewart's driving by failing to contact Woody's and prevent the release of [his

5

vehicle]." (Bolding omitted.) In support of their argument, the plaintiffs rely upon: (1) Stewart's deposition testimony "that he was visibly intoxicated throughout the time of his arrest until the June 26, 2010 accident"; (2) Barbieri's opinion "that, based on the levels of multiple drugs in Mr. Stewart's blood taken on June 26, 2010, Mr. Stewart would have exhibited impairment signs on the morning of June 26, 2010"; and (3) the voicemail message that Stewart left for Gioia on the day of the collision "that evidenced his continued impairment."

We have reviewed the record and conclude that, taking the evidence in the light most favorable to the plaintiffs, it does not give rise to a genuine issue of material fact on the dispositive issue of whether Gioia knew, or should have known, that, at the time Stewart arrived at Woody's to pick up his vehicle, he was impaired and, therefore, unfit to drive. Although Stewart speculated in his deposition testimony that it "would have been obvious" that he exhibited signs of impairment when he was at Woody's, he repeatedly stated that he had virtually no memory of the time between his arrest on the night of June 25 and the collision.

Moreover, Gioia was not at Woody's when Stewart picked up his vehicle; his last interactions with Stewart were the two brief telephone conversations at 6:49 a.m. and 7:23 a.m. on June 26 which, according to Gioia's uncontradicted deposition testimony, were "normal" conversations. In his toxicology report, Barbieri opines that "within a reasonable degree of scientific certainty . . . Stewart was impaired by [Xanax] at the time of the motor vehicle accident" and "was showing signs of [central nervous system] impairment during the first [arrest] and his contact with . . . Gioia." (Emphases added.) But, he does not address Stewart's condition at the specific time at issue — when he picked up his vehicle at Woody's.

Because the plaintiffs rely solely upon conjecture as to Stewart's condition when he spoke on the telephone with Gioia at 6:49 a.m. and 7:23 a.m., and when he picked up his vehicle at Woody's, they have failed to set forth specific facts showing a genuine issue for trial. See Hill-Grant Living Trust, 159 N.H. at 535; see also State v. Pessetto, 160 N.H. 813, 818 (2010) (explaining that "speculation . . . is not evidence").

The plaintiffs further argue that, based upon the voicemail message that Stewart left for Gioia at 11:19 a.m., Gioia "was in a position to know of Mr. Stewart's intoxication on the morning of June 26." However, because Stewart had retrieved his car from Woody's well before he left his voicemail message, that message is irrelevant to the plaintiffs' negligent entrustment claim. Accordingly, we hold that the Pelham defendants are entitled to judgment as a matter of law, and we affirm the trial court's grant of summary judgment.

C. Woody's

    1. RSA 262:32 and RSA 262:40

    The plaintiffs argue that the trial court erred when it granted summary judgment in favor of Woody's on the ground that, because the vehicle was towed pursuant to RSA 262:32 rather than impounded pursuant to RSA 262:40, Woody's was not required to obtain authorization from either the Pelham Police Department or a court before releasing the vehicle to Stewart. The plaintiffs assert that, because Gioia arrested Stewart for driving while under the influence the night before the collision and had his vehicle towed to Woody's, the vehicle was "used in connection with a criminal offense, and a peace officer . . . ordered the removal and impoundment of such vehicle." RSA 262:40. Thus, the plaintiffs assert that Woody's violated RSA 262:40 when it released Stewart's vehicle to him without prior authorization. In response, Woody's argues that the trial court correctly concluded that Stewart's vehicle was towed pursuant to RSA 262:32 rather than impounded. We agree with Woody's.

    Because resolving this issue requires us to engage in statutory interpretation, our review is de novo. See Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 696 (2013). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute, and, when possible, we ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Strike Four v. Nissan N. Am., 164 N.H. 729, 735 (2013). We interpret statutory provisions in the context of the overall statutory scheme. Id.

    Pursuant to RSA chapter 262, "[a]n authorized official may take a vehicle into his or her custody and may cause the same to be taken away and stored at some suitable place" only as provided in the statute. RSA 262:31 (2014). An "[a]uthorized official" is "any police employee of the division of state police, highway enforcement officer or other authorized employee of the department of safety, or peace officer." RSA 259:4-a (2014) (quotation omitted).

    RSA 262:32 sets forth seven circumstances under which an authorized official "may cause the removal and storage of a vehicle." As pertinent here, an authorized official may do so if he or she "has reasonable grounds to believe" that "[t]he owner or custodian of the vehicle is under arrest or otherwise incapacitated, and the vehicle will be a menace to traffic if permitted to remain." RSA 262:32, VI. If a vehicle is removed pursuant to RSA 262:32, "all reasonable charges incurred as a result of such removal and storage shall be a lien against the vehicle which shall be paid by the owner . . . claiming such

7

vehicle," RSA 262:33, I (2014), and "the owner . . . shall be entitled to recover said vehicle and release of the above lien by payment of all reasonable towing and storage charges," RSA 262:33, II (2014).

By contrast, RSA 262:40 provides that:

> Whenever a vehicle is reasonably believed to have been used in connection with a criminal offense, and a peace officer has ordered the removal and impoundment of such vehicle, the custodian of said vehicle shall release it upon authorization of the removing agency or a court of competent jurisdiction.

Viewing this statutory scheme as a whole, we conclude that the plain language in RSA 262:32, VI authorizes police officers to remove a vehicle after the owner is arrested if "the vehicle will be a menace to traffic," whereas the language in RSA 262:40 is reasonably interpreted to authorize police officers to remove and impound a vehicle because it may be evidence of a crime. Because under RSA 262:32, VI, a vehicle is removed simply to eliminate the hazard it otherwise poses to traffic, the owner of the vehicle may recover it upon payment of the towing and storage fees. However, because a vehicle is removed under RSA 262:40 in order to retain it for evidentiary purposes, the vehicle may not be released until authorized by law enforcement or a court.

As Gioia testified during his deposition, he arrested Stewart and then asked Woody's to tow Stewart's vehicle because it was a "nuisance" on the road, and so that "vehicle traffic could flow smoothly on that roadway." He also testified that there was no reason to preserve the vehicle for any evidentiary purpose and that the police had "no use" for the vehicle after they left the scene of the arrest. The Pelham police chief similarly testified that Stewart's vehicle was towed to Woody's because Stewart had been arrested, the vehicle was "on a roadway in a dangerous place," and, therefore, to avoid an accident, the vehicle needed to be removed from the road. There is no evidence that any law enforcement officer instructed Woody's to hold the vehicle until the police or a court authorized its release.

We conclude that the undisputed facts establish that Stewart's vehicle was towed pursuant to RSA 262:32. No officer "ordered the removal and impoundment of" Stewart's vehicle. RSA 262:40. The vehicle was not placed in the custody of a law enforcement official or a court, or retained for any evidentiary purpose. Rather, the evidence demonstrates that Gioia "cause[d] the removal and storage" of Stewart's vehicle because he had "reasonable grounds to believe that" Stewart was "under arrest or otherwise incapacitated, and the vehicle w[ould] be a menace to traffic if permitted to remain" in the roadway. RSA 262:32, VI. Because Stewart's vehicle was towed and stored pursuant to RSA 262:32 and not impounded under RSA 262:40, Woody's did

8

not need to obtain authorization from the Pelham Police Department or a court before releasing it to Stewart.

### 2. Negligent Entrustment and Negligence

The plaintiffs also argue that the trial court erred when it granted summary judgment in favor of Woody's on their claim that Woody's was liable for negligent entrustment. The plaintiffs assert that Woody's had "custody and control" over the vehicle and released it to a "visibly intoxicated" Stewart. The plaintiffs contend that a negligent entrustment claim can apply to anyone with control over a vehicle who "knowingly lets an unfit person, such [as] an intoxicated person, . . . operate that vehicle." Woody's counters that "New Hampshire has not extended a negligent entrustment action against any party that is not the owner of a vehicle." It also argues that there is no evidence that, at the time that Stewart picked up his vehicle, a Woody's employee knew, or should have known, that Stewart was impaired. Because we agree that there was no evidence that Wood, the only Woody's employee to interact with Stewart, knew, or should have known, of Stewart's alleged impairment when he picked up his vehicle, we need not decide whether a negligent entrustment claim extends to non-owners of a vehicle.

In order to survive a motion for summary judgment, "a plaintiff must provide either evidence of the driver's appearance or conduct at the time of the entrustment, or evidence that the owner was otherwise aware of the driver's incompetence at that time." Weber v. Budget Truck Rental, LLC, 254 P.3d 196, 199 (Wash. Ct. App. 2011). "Because the standard of liability revolves around appearance, any direct or circumstantial evidence must address actual rather than assumed appearance." Id. (quotation and brackets omitted).

Neither Stewart's deposition testimony nor Barbieri's toxicology report gives rise to a genuine issue of material fact as to whether Wood knew, or should have known, that Stewart was unfit to operate his vehicle when he retrieved it from Woody's between 8:30 a.m. and 10:00 a.m. Although Stewart speculated in his deposition testimony that it "would have been obvious" that he exhibited signs of impairment when he was at Woody's, and that when he took too much Xanax he would slur his speech, "black[ ] out," and display "[b]ad coordination," this testimony does not create a disputed fact as to whether Wood observed signs of impairment such that he knew, or should have known, that Stewart was intoxicated. Further, as discussed above, although Barbieri concludes in his toxicology report that Stewart was impaired when he was arrested on the night of June 25 and at the time of the accident the following day, he does not render an opinion as to whether Stewart was impaired at the time he picked up his vehicle from Woody's.

9

We agree with the trial court:

> What remains problematic for Plaintiffs is that this case is fundamentally about Mr. Stewart's behavior when he retrieved his vehicle, and, more directly, Mr. Wood's perceptions of Mr. Stewart at that time. Mr. Stewart admittedly has no memory of that particular encounter. Doctor Barbieri . . . speaks only in generalities and makes no mention of Mr. Stewart's behavior at Woody's. This evidence addresses the assumed appearance of Mr. Stewart, not his actual appearance . . . . Put another way, it would be inappropriate for the jury to make the inferential leap from this evidence that Mr. Wood actually observed that Mr. Stewart was visibly intoxicated.

(Citations omitted.)

Wood testified in his deposition that Stewart did not appear to be impaired when he picked up his vehicle. He explained that Stewart "wasn't falling down" and did not smell of alcohol, have glassy eyes, slurred speech, or seem unsteady on his feet. Wood stated that he was able to understand what Stewart said to him, that Stewart seemed to comprehend what Wood said to him, and that he would not have released the vehicle had Stewart exhibited any signs of impairment. We note that when Stewart's vehicle was searched following the collision the police found, for the first time, a Xanax prescription "tag" in the back seat, thus suggesting that the drugs were taken after Stewart picked up the vehicle at Woody's. See Bourgeois v. Vanderbilt, 639 F. Supp. 2d 958, 966 (W.D. Ark. 2009) (granting summary judgment in favor of a casino on plaintiff's negligent entrustment claim because there was no "testimony or other evidence to indicate that [the casino] knew or should have known that [the defendant] was intoxicated" when he retrieved his vehicle from valet parking), aff'd on other grounds, 417 F. App'x 605 (8th Cir. 2011); see also Weber, 254 P.3d at 199 (rejecting, as insufficient to create a question of fact for trial, expert's testimony that, given the amount of methamphetamine in the driver's system at the time of his arrest, it was probable that he exhibited "characteristic effects" of methamphetamine intoxication when he rented the vehicle (quotation omitted)). Thus, we conclude that the trial court did not err when it granted summary judgment to Woody's on the plaintiffs' negligent entrustment claim.

We likewise reject the plaintiffs' argument that the trial court erred in entering summary judgment in favor of Woody's on their negligence claim. The plaintiffs contend that based upon its towing contract with the Pelham Police Department, Woody's had a duty not to release "a vehicle to an intoxicated person" because "injury to innocent third parties was foreseeable," and because Woody's "voluntarily assumed a duty not to release vehicles to intoxicated individuals." However, because there is no evidence that Wood knew, or

10

should have known, that Stewart was impaired when he retrieved his vehicle, we need not decide whether Woody's had a duty to not release a vehicle to an impaired person.  Accordingly, there is no evidence that Woody's breached this purported duty.  Therefore, the trial court did not err when it granted summary judgment to Woody's on the plaintiffs' negligence claim.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.