# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0325, <u>James Faro & a. v. IKO Industries, Inc.</u>, the court on January 26, 2018, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The plaintiffs, James Faro and Mary Jean Faro, appeal an order of the Superior Court (<u>Ignatius</u>, J.), granting summary judgment in favor of the defendant, IKO Industries, Inc., on their claims arising out of the alleged premature failure of roofing shingles manufactured by the defendant.  They argue that, in granting summary judgment on their breach of express warranty claim, the trial court erred by concluding that the summary judgment record did not support findings: (1) that the defendant advertised its shingles as "30-year" shingles, or made any express warranty concerning the longevity of its shingles that was in addition to a written limited warranty (limited warranty); or (2) that representations within the defendant's marketing materials had become a basis of the parties' bargain.[1]

In reviewing an order granting summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from such evidence, in the light most favorable to the nonmoving party.  <u>Weaver v. Stewart</u>, 169 N.H. 420, 425 (2016).  We review the trial court's application of law to the facts <u>de</u> <u>novo</u>.  <u>Id</u>.

The party opposing a properly-supported motion for summary judgment must do more than merely assert general allegations or denials; rather, the opposing party must set forth specific facts demonstrating that there is a

---

[1] In addition to breach of express warranty, the plaintiffs asserted claims for breach of implied warranty, violations of the New Hampshire Consumer Protection Act and the federal Magnuson-Moss Act, and negligent misrepresentation.  On appeal, however, they challenge only those portions of the trial court's narrative order that analyzed the summary judgment record as to the breach of express warranty claim.  Although the plaintiffs contend, in passing, that the evidence on summary judgment created genuine issues of material fact not only as to whether the defendant breached an express warranty as to the longevity of its shingles, but as to whether the defendant misrepresented the longevity of its shingles or violated the Consumer Protection Act, they have not argued that, even if the trial court's analysis of the summary judgment record as to their express warranty claim is correct, its analysis as to any of their remaining claims is erroneous.  Accordingly, any such argument is waived.  <u>See</u> <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003) (stating that only arguments that are fully briefed will be reviewed on appeal).

genuine issue for trial.  Id.  If our review of the evidence discloses no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law, we will uphold the trial court's order granting summary judgment.  Id.  An issue of fact is "material" if it affects the outcome of the case under applicable substantive law.  Lynn v. Wentworth By The Sea Master Ass'n, 169 N.H. 77, 87 (2016).

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain," creates an express warranty that the goods will conform to the affirmation, promise, or description.  RSA 382-A:2-313(1)(a)&(b) (2011).  However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  RSA 382-A:2-313(2) (2011).  "Therefore, to create an express warranty, the promise or affirmation of fact must both relate to the goods and become part of the basis of the contractual bargain."  Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 841 (2005).

The statute of limitations on a claim for breach of express warranty is generally four years from when the claim has accrued.  RSA 382-A:2-725(1) (2011).  By agreement, however, parties may reduce the limitations period to not less than one year.  Id.  A breach of express warranty claim "accrues" upon tender of delivery of the goods, unless the warranty "explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance," in which case the claim accrues "when the breach is or should have been discovered."  RSA 382-A:2-725(2) (2011).

In Kelleher, we held that a specific statement in window marketing materials describing a window's design and unambiguously asserting that, as a result of the design, the window would be "permanently" protected against rot, was sufficient to constitute both a promise or affirmation of fact that the windows would be permanently protected against rot damage for purposes of RSA 382-A:2-313, and an explicit extension to future performance so as to create a lifetime warranty and trigger the discovery rule of RSA 382-A:2-725(2).  Kelleher, 152 N.H. at 828-29, 841, 844.  We further held, however, that to establish that the statement was "part of the basis of the bargain," the buyer of the windows had the burden to prove that, at some point during the bargaining process, he actually "read, heard, saw or was otherwise aware of the representation" in the marketing materials.  Id. at 844.

The summary judgment record here establishes that the shingles at issue were delivered and installed in 2001, when the plaintiffs built their house.  According to the plaintiffs' responses to interrogatories, they "believe[d] that [the shingles] were either '30 year shingles' or '35 years shingles,'" and their belief as to the "duration of the guarantee and promise" was based upon

2

representations made "either by the installer, the architect or the builder" of the house. They further represented that they "subsequently confirmed" their understanding concerning the shingles "through internet searches," that they had "selected the [defendant's] shingles based upon their 'architectural' quality designation and the 30 or 35 year guarantee," that the alleged "30 or 35 year guarantee" was "set forth in marketing materials," and that they had requested the defendant to produce "the brochures, product catalogs, packaging etc. upon which [they had] relied in 2001 when . . . [they had] decided on the shingle kind and quality." In fact, the plaintiffs requested in discovery that the defendant produce "copies of any labels, inserts, forms, instructions, manuals, installation guides, product descriptions, literature or packaging materials used in the marketing and/or sale" of the shingles at issue "from the time of original manufacture/marketing, to the present," as well as "any marketing materials, posters, information, pamphlets, product literature or purchasing manuals used by [the defendant] from 1995 to the present that includes or references" the shingles at issue. The defendant produced 16,849 pages in response, but subject to an objection that the requests required production of documents that the plaintiffs or their contractor would never have seen.

Each bundle of shingles delivered to the plaintiffs' property in 2001 was wrapped in packaging notifying the purchaser, in all capital letters, that the shingles were subject to a limited warranty, that the limited warranty was provided to dealers and contractors for distribution to purchasers and was also available on the defendant's website, and that the purchaser should read and retain a copy of the limited warranty. The limited warranty itself warranted that the shingles were "free from manufacturing defects that result in leaks" for a total period of thirty years beginning on the date of installation (warranty period). The limited warranty further provided that, for the first five years of the warranty period, the defendant would repair or replace any defective shingles, but that its maximum liability would be "equal to the reasonable replacement cost of the defective shingles," and that it would not "be responsible for roof tear-off, flashing, and metal work or required repairs to associated defects or damage." After the first five years of the warranty period, the limited warranty further reduced the defendant's liability to "a prorated amount of the current value of the shingles only (exclusive of labor, disposal and tear-off)," to be "calculated by reducing the reasonable replacement material cost by the monthly reduction figures for the specific shingles for each month the shingles have been installed." The limited warranty required the purchaser to notify the defendant of any defect within thirty days of its discovery, and provided that no action for breach of warranty would be brought more than one year after the cause of action had accrued. Finally, the limited warranty provided that it "REPLACE[D] ALL OTHER ORAL OR WRITTEN WARRANTIES" of the defendant, and disclaimed any liability "FOR ANY ORAL STATEMENT OR OTHER WRITTEN STATEMENT ABOUT THE SHINGLE."

3

In September 2012, the plaintiffs learned that the shingles had failed, and that their roof needed to be replaced. In July 2013, the plaintiffs requested, and the defendant provided, a warranty claim package, and in September 2014, the plaintiffs submitted a warranty claim to the defendant. In March 2015, the defendant rejected the claim, reasoning in part that the shingles had not caused leaking so as to fall within the terms of the limited warranty, and noting that areas of shingle damage appeared to be attributable to improper installation. The plaintiffs filed suit on August 26, 2015, asserting that the defendant had breached a warranty to provide "30 Year" shingles.

In moving for summary judgment, the defendant established, through an affidavit of its warranty services manager, the terms of the limited warranty that applied to the shingles purchased by the plaintiffs, that the shingles came wrapped in the packaging notifying the purchaser that they were sold with the limited warranty, and that the limited warranty was available on the defendant's website at the time of the purchase. The defendant also established, by submitting the plaintiffs' interrogatory responses, that the plaintiffs had identified no specific statement by the defendant regarding the future performance of the shingles they had purchased beyond their general assertions that they were aware of "marketing materials" in 2001 that referenced a "30 or 35 year guarantee." The defendant argued that the suit was untimely under the one-year limitations period contained within the limited warranty, and that there was no evidence of any specific and unambiguous representation of the defendant regarding the future performance of its shingles on which the plaintiffs could establish the defendant's liability beyond the terms of the limited warranty.

The plaintiffs objected, arguing that their breach of warranty claim was not based upon the limited warranty, but upon a warranty "for a shingle that was represented in [the defendant's] marketing materials and understood by consumers in the marketplace to last 35 years." Thus, they contended that the four-year statute of limitations of RSA 382-A:2-725(1), and not the one-year limitations period of the limited warranty, applied, and that the statute did not begin to run under the discovery rule of RSA 382-A:2-725(2) until September 2012, when they learned that the shingles needed to be replaced. In support of their objection, the plaintiffs submitted an affidavit of plaintiff James Faro stating that his "understanding and expectation" that the shingles would last thirty or thirty-five years arose "from discussions with our architect and builder concerning different degrees of shingle quality, and that shingles came in different qualities based upon the duration of the warranty." According to Mr. Faro, the plaintiffs "ordered '35 year shingles' . . . because [they] understood that the 35 year warranty ensured that the product would last around 35 years." Additionally, the plaintiffs submitted an affidavit from a retained witness with experience in the construction industry, asserting that the expectation among consumers and those in the construction industry is that a roofing shingle will last the duration of its warranty, and that certain

language used in marketing materials produced by the defendant contained language, such as "30-year" shingles, that would lead a consumer to believe that the shingles would last for the duration of the warranty. Attached to the retained witness's affidavit were several pages of marketing materials that the defendant had produced in response to the plaintiffs' document production requests. The plaintiffs provided no affidavit or other evidence, however, establishing that at the time they purchased the shingles, they had reviewed, or were aware of, any of those specific marketing materials.

Although the trial court initially denied the motion, finding that there were material facts in dispute concerning when the plaintiffs should have discovered that the shingles were defective, it subsequently reconsidered its decision, see Radziewicz v. Town of Hudson, 159 N.H. 313, 315 (2009) (stating that trial court has power to reconsider issue until final judgment or decree), ordered the parties to engage in limited discovery concerning the statute of limitations, and held a hearing on the summary judgment motion. Following the hearing, the trial court granted the motion, finding that "the summary judgment record fail[ed] to support the [plaintiffs'] assertion that an express warranty separate from the Limited Warranty exists in this case."

First, the trial court concluded that the plaintiffs had failed "to identify any 'promise or affirmation' from [the defendant] that its . . . shingles had a 30 or 35 year lifespan." The court observed that, with respect to the marketing materials attached to the retained expert's affidavit, "[w]ithout exception, every material from [the defendant] regarding [the shingles at issue] clearly references the 'limited warranty.'" The court further observed that "the only representations in these marketing materials pertaining to duration are that the . . . shingle is backed by a 'limited' 30 or 35 year warranty." Thus, the court determined that "[t]hese statements [were] not guarantees that the . . . shingles will last for a particular number of years, but rather an affirmation that the shingles come with a 30 or 35 year limited warranty." Although the trial court acknowledged that two pages of the marketing materials did not reference the limited warranty, it found that those pages were not from the defendant, but were from a related company that "does not advertise or sell its shingles within the United States" and, thus, could not bind the defendant. Second, the trial court determined that, even if the marketing materials had guaranteed that the shingles would last for thirty or thirty-five years, because there was no evidence that the plaintiffs or their installer, architect, or builder had "read, heard, saw or [were] otherwise aware of the representation[s]," Kelleher, 152 N.H. at 844, the plaintiffs could not establish that the representations had become part of the basis of the bargain. Finally, to the extent that the plaintiffs were asserting a claim for breach of the limited warranty, the trial court reasoned that the limited warranty did not guarantee that the shingles would last for thirty years without limitation, and that, in any event, any claim for breach of the limited warranty was time-barred.

On appeal, the plaintiffs do not contest that they failed to assert a timely claim for breach of the limited warranty. Instead, they argue that the trial court erred by determining, on summary judgment, that the defendant did not market its shingles as "30-year" shingles or otherwise make an express warranty that was outside the scope of the limited warranty, and that the statements in the defendant's marketing materials were not part of the basis of the parties' bargain. We disagree.

At the outset, we reject the plaintiffs' contention that the trial court erred by relying upon an "evidentiary proffer" of the defendant's counsel to find that two pages of the marketing materials submitted with their retained witness's affidavit were not from the defendant, but were from a related company that "does not advertise or sell its shingles within the United States." The plaintiffs assert, and the defendant agrees, that this finding was based upon a representation of the defendant's counsel at the summary judgment hearing.

If, as the plaintiffs suggest, the defendant improperly supplemented the summary judgment record by submitting evidence at the summary judgment hearing in the form of an offer of proof, it was incumbent upon them to object to the "evidentiary proffer." See McIntire v. Woodall, 140 N.H. 228, 230 (1995) (rejecting argument that trial court deprived plaintiff of due process by taking testimony at non-evidentiary hearing because plaintiff did not object to the taking of testimony); see also McIntire v. Lee, 149 N.H. 160, 163 (2003) (explaining that hearing at which trial court heard testimony, without objection, in McIntire v. Woodall was a summary judgment hearing). Likewise, if it was erroneous for the trial court to rely upon the "evidentiary proffer" in its final order because it was outside the scope of the summary judgment record as defined by RSA 491:8-a, III (2010), it was incumbent upon the plaintiffs to bring the alleged error to the trial court's attention in a motion for reconsideration. Super. Ct. R. 12(e) ("To preserve issues for an appeal to the Supreme Court, an appellant must have given the court the opportunity to consider such issues; thus, to the extent that the court, in its decision, addresses matters not previously raised in the case, a party must identify any alleged errors concerning those matters in a motion [for reconsideration]."); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002) (holding that challenge to alleged error that appellant could not have anticipated until the trial court had issued its final order was not preserved because the appellant did not bring the alleged error to the trial court's attention in a motion for reconsideration).

As the appealing parties, it is the plaintiffs' burden to provide a record on appeal that is sufficient both to decide the issues they are raising, and to demonstrate that they raised those issues in the trial court. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). The record on appeal contains neither a transcript of the hearing on summary judgment showing the precise scope of the offer of proof or any objection to it, nor a motion for reconsideration challenging the trial court's reliance upon the "evidentiary proffer" in its final order. We note

6

that the defendant asserts, and the plaintiffs do not dispute, that the documents that were the subject of the offer of proof and the trial court's finding are the documents referred to by the parties as documents 42 and 43. Accordingly, we assume that a transcript of the hearing would support the trial court's finding that documents 42 and 43 were not from the defendant, but from a separate company that only marketed and sold shingles outside the United States, see id., and conclude that any argument that the trial court erred by allowing the defendant's counsel to make, and by relying upon, an evidentiary proffer at the hearing is not preserved, see id; Butland, 147 N.H. at 679.

The plaintiffs' claim in this case was that the defendant breached an express warranty to provide shingles that would, without qualification, last thirty years. To prevail upon this claim, it was the plaintiffs' burden to establish at trial that the defendant provided a description of the shingles, or made a promise or affirmation of fact related to them, that they had actually read, heard, saw or were otherwise aware of at the time they purchased the shingles, that the shingles would not need to be replaced for thirty years. Kelleher, 152 N.H. at 841, 844; RSA 382-A:2-313(1). In moving for summary judgment, the defendant established that it did, in fact, provide a thirty-year warranty on the shingles. However, that warranty was limited and subject to conditions, including a limitations period shortened pursuant to RSA 382-A:2-725(1), and purported to disclaim liability for any other warranties, see RSA 382-A:2-316 (2011). The defendant further established that the plaintiffs had notice of the limited warranty when they purchased the shingles, and that they were not entitled to prevail under its terms. Finally, the defendant established that, although the plaintiffs had alleged in their complaint that the defendant had represented that the shingles would not need to be replaced for thirty years, they had not identified any specific representation of the defendant in their interrogatory responses to that effect, or that was otherwise inconsistent with the thirty-year limited warranty with which the shingles were sold.

In short, the defendant met its burden on summary judgment to establish the absence of a genuine issue of material fact, and that it was entitled to judgment as a matter of law as to the express warranty claim. Under these circumstances, the burden shifted to the plaintiffs to establish specific facts beyond mere general allegations demonstrating that there was a genuine issue for trial. Weaver, 169 N.H. at 425. We conclude that the plaintiffs failed to carry their burden.

Contrary to the plaintiffs' argument, their responses to the defendant's interrogatories were not, alone, sufficient to create a triable issue of fact. The interrogatory responses establish only that: (1) the plaintiffs believed the shingles were "either '30 year shingles' or '35 year shingles'"; (2) their belief was based upon representations of their installer, architect, or builder; (3) they confirmed the representations of their installer, architect, or builder by engaging in "internet searches"; (4) they selected the defendant's shingles

"based upon their 'architectural' quality designation and the 30 or 35 year guarantee, which was set forth in marketing materials"; and (5) they had requested that the defendant produce the documents upon which they had relied when they chose the defendant's shingles in 2001. The responses did not, however, otherwise describe the terms of the "30 or 35 year guarantee . . . set forth in marketing materials" in any manner that was inconsistent with the thirty-year limited warranty with which the shingles in fact were sold. Nor did they identify a single representation of the defendant that the shingles, without limitation, would last for thirty or thirty-five years. See Kuzian v. Electrolux Home Products, Inc., 937 F. Supp. 2d 599, 611 (D.N.J. 2013) ("[A]n express warranty with a limited time period does not mean that a seller is promising a defect-free product."). At most, the representations in the interrogatory responses amounted to conclusory allegations that were insufficient to overcome the defendant's motion. See Hill-Grant Living Trust v. Kearsarge Lighting Precinct, 159 N.H. 529, 535 (2009).

Nor did the affidavits and discovery submitted by the plaintiffs in opposition to the summary judgment motion create a triable issue of fact. The affidavit of James Faro establishes only that he had an expectation that the shingles would last for the duration of the defendant's warranty, and that his expectation was based upon his discussions with his architect and builder. The affidavit of the plaintiffs' retained witness likewise establishes only that there is a general belief among consumers and those in the construction industry that a roofing shingle will last for the duration of the manufacturer's warranty, and that the nomenclature used by manufacturers encourages that belief. As the trial court observed, however, none of the marketing materials attached to the witness's affidavit and relied upon by him contain promises of the defendant concerning the longevity of the plaintiffs' shingles that do not refer the reader to the limited warranty. Accordingly, the evidence provided in opposition to the summary judgment motion does not establish that the defendant promised, without qualification, that the shingles would not need to be replaced within the warranty period, but establishes only that it promised the protection of a limited warranty. See Kuzian, 937 F. Supp. 2d at 611.

We reject the plaintiffs' contention that, by finding that documents 42 and 43 could not bind the defendant because they were from a separate company that does not market or sell shingles within the United States, the trial court improperly weighed the evidence. To the contrary, the trial court properly determined that those documents did not give rise to a genuine dispute of material fact. Cf. Weaver, 169 N.H. at 430 (finding that trial court properly determined that evidence that a motorist was intoxicated did not create a genuine dispute of material fact as to whether the motorist actually appeared intoxicated so as to give rise to liability for negligent entrustment). The fact that an entity other than the defendant made representations about the shingles in marketing them to consumers in a country other than the United States does not create a genuine issue of material fact as to whether the

defendant made representations that the plaintiffs actually read, heard, saw, or were otherwise aware of when they purchased their shingles in New Hampshire. Nor does the mere fact that the defendant produced the documents, subject to an objection that the document production requests were overbroad, create a genuine dispute of material fact over whether the defendant made the statements, or whether the plaintiffs read or were aware of them in 2001. As noted above, in the absence of a transcript of the summary judgment hearing, we assume that the "evidentiary proffer" of the defendant at the hearing supports the trial court's finding that those documents were from a separate company that does not market or sell shingles in the United States.

Finally, we agree with the trial court that, even if the marketing materials had provided unqualified statements that the shingles would last thirty or thirty-five years, the absence of any evidence establishing that the plaintiffs "read, heard, saw or [were] otherwise aware of the representation[s]" in those materials is fatal to a breach of warranty claim based upon the marketing materials. Kelleher, 152 N.H. at 844.

To the extent the plaintiffs contend that Utah Div. of Consumer Protection v. GAF Corp., 760 P.2d 310 (Utah 1988), compels a different result, we agree with the trial court that, even if we were to assume that GAF Corp. is consistent with New Hampshire law, it is distinguishable from this case. In GAF Corp., the Utah Division of Consumer Protection (division), a state administrative agency, brought suit pursuant to a Utah statutory scheme against a roofing manufacturer for engaging in unlawful deceptive acts or practices under the Utah Consumer Sales Practices Act. GAF Corp., 760 P.2d at 312. The suit arose out of defective roofing shingles sold by GAF, a roofing manufacturer, to a Utah consumer in 1974. The consumer testified that, prior to purchasing the shingles, he had seen marketing materials from GAF stating that the shingles provided "a 25-year roof," that he understood from the materials that GAF would remedy any defects in the shingles that appeared within twenty-five years, and that GAF did not notify him that the shingles were subject to a written limited warranty. Id. GAF informed the consumer, according to his testimony, of the written limited warranty only after it had investigated the shingles and determined that they were defective in 1981, and at that point, he complained to the division. Id.

The division brought suit, alleging, in part, that GAF had violated a Utah statute defining as "deceptive" any false indication by a supplier that "'a consumer transaction involves or does not involve a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies, or obligations.'" Id. at 314 (quoting Utah Code Ann. § 13-11-4(2)(j) (Supp. 1983)). The division asserted that GAF had violated this provision by making an express warranty to the consumer in 1974 and later attempting to disclaim it. Id. The trial court granted GAF summary judgment on procedural grounds, ruling that, under Utah law, the division was not entitled to pursue claims on

the consumer's behalf.  See id. at 312.  After reversing the procedural ruling, the Utah Supreme Court addressed whether the division had stated claims upon which relief could be granted under Utah law.  See id. at 313.  In holding that the division had stated a claim for attempting to disclaim an express warranty, the Utah Supreme Court reasoned that, although the marketing materials the consumer testified he had reviewed in 1974 were not yet in the record, such materials could "constitute express warranties under Utah law" if they "contained representations about the quality of the shingles."  Id. at 314.

Unlike the record in GAF Corp., the record in this case establishes not only that the defendant had sold the shingles with a thirty-year limited warranty in 2001, but that the plaintiffs had notice of the limited warranty at the time of sale.  Moreover, unlike the consumer in GAF Corp., who unequivocally testified that he had reviewed the manufacturer's marketing materials prior to the sale, and that the materials stated that the shingles provided "a 25-year roof," the plaintiffs' interrogatory responses and affidavit were equivocal, establishing only that they had a "belief" that the shingles were either "30-year shingles" or "35-year shingles" based upon discussions with third parties, that they had conducted "internet searches" to confirm their belief, and that there was a "30 or 35 year guarantee . . . set forth in marketing materials."  Finally, the defendant produced almost 17,000 pages of documents in this case, and of those pages, the marketing materials that the plaintiffs provided on summary judgment containing representations of the defendant represented that the shingles were protected by the limited warranty.

We conclude that, even when considered in the light most favorable to the plaintiffs, the summary judgment record fails to establish that the defendant made any guarantee concerning the longevity of the shingles beyond the representation that they came with the protections of the thirty-year limited warranty.  Because the plaintiffs do not otherwise contend that they were entitled to relief under the limited warranty, we conclude that the trial court did not err by granting the defendant summary judgment.

Affirmed.

Dalianis, C.J., and Hicks, Lynn, and Hantz Marconi, JJ., concurred.

**Eileen Fox,
Clerk**